The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
Prior to the initial hearing in this matter, the parties entered into a Pre-Trial Agreement, which is incorporated herein by reference. In addition to the stipulations contained in the aforementioned Pre-Trial Agreement, the parties furthermore stipulated to a packet of medical records which was received into evidence as Stipulated Exhibit No. 1.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. As of the initial hearing, plaintiff was a fifty-five year old married male with three children. He attended school until the fifth grade. Plaintiff experiences difficulty reading and writing.
2. Plaintiff was employed by defendant-employer from October 21, 1974 until February 7, 1977 as a craftsman's helper. After he last worked with defendant-employer in 1977, plaintiff performed odd jobs working for several different farmers. As a craftsman's helper assigned to the maintenance department, plaintiff was responsible for performing general maintenance work such as laying and cutting pipe. Plaintiff was also assigned to perform other tasks including cleaning the furnace, the fractionating tower and storage tanks at defendant-employer's facility, a refinery which processed oil including "sour" crude oil which was a toxic waste obtained from overseas. There are also gasoline tanks located on defendant-employer's facility, which at times held either leaded or unleaded gasoline.
3. While outside contractors were employed by defendant-employer to clean defendant-employer's gasoline storage tanks, plaintiff, as part of his job duties, also cleaned the storage tanks. While cleaning the storage tanks, plaintiff was not required to wear a "rain-suit", a type of protective clothing, by defendant-employer although he did wear a "fresh-air" mask. However, on occasion, these masks leaked and plaintiff could smell as well as taste the gas fumes. When plaintiff was assigned to clean a tank, he would take up to eight hours on occasion to complete the task. On one occasion when plaintiff was cleaning a tank his mask leaked, and plaintiff passed out and had to be pulled out of the tank. Furthermore, when cleaning a tank which had contained leaded gasoline, plaintiff would use a sledgehammer to chip off the scales in the tank, and in doing so, was exposed to toxic fumes.
4. In addition to being exposed to gas fumes when cleaning the tanks, plaintiff also was exposed to gas fumes when unloading tank drain hoses and when "hot-tapping." "Hot-tapping" is when a hole is drilled into a pipe carrying the product going into the tank. Plaintiff wore no protective gear when "hot-tapping" and was exposed to fumes and liquid on these occasions. Additionally, plaintiff was exposed to gas fumes when he assisted with cleaning oil spills, pulling lines and opening manholes. Plaintiff also assisted with building boxes to hold gas saturated seals, and he assisted with boxing the seals and burying them. As with "hot tapping" adequate protective gear was not provided to plaintiff when carrying out these job duties.
5. When the plant was closed down, plaintiff, as part of his job duties, also cleaned the furnace. There were asbestos blocks insulating the furnace; and when the asbestos had crumbled, plaintiff would sweep out the crumbled asbestos and would also replace any damaged blocks. When cleaning the furnace, the only protective gear plaintiff wore was a paper mask. Also in cleaning the refractory tower, which occurred approximately twice a year, the only protective gear worn by plaintiff was again, a paper mask.
6. Plaintiff began smoking when he was eighteen years old and continued smoking anywhere from a few cigarettes a day to a pack a day from 1954 until 1993. At the initial hearing, plaintiff testified that he continued to smoke on occasion.
7. After leaving employment with defendant-employer in 1977, plaintiff began experiencing stomach problems. When initially seen by Dr. Williams on August 17, 1982, plaintiff related a history of generally good health and that he was self-employed. However, in 1982, plaintiff subsequently underwent surgery for removal of a plasmacytoma. Following said surgery, plaintiff has continued to experience various gastrointestinal problems necessitating medical treatment including "dumping", a condition where plaintiff is unable to retain food following ingestion. After his surgery in 1982, medical records reveal that plaintiff has lost a substantial amount of weight and is malnourished as a result of his gastrointestinal problems.
8. Plasmacytoma is a precursor of another disease called multiple myeloma. There exists a direct relationship between Benzene exposure and the risk of developing multiple myeloma. Benzene is a chemical contained in petroleum products including crude oil, and the expert medical opinion by Dr. Stopford was that plaintiff, like all refinery workers, was necessarily presumed to be exposed in some degree to Benzene, as it is a component of the petroleum product. During plaintiff's employment with defendant-employer at its petroleum refinery he was exposed to Benzene as adequate protective gear was not provided to plaintiff while he was carrying out his job duties which exposed him to gas and oil fumes. Therefore, plaintiff was placed at an increased risk of developing plasmacytoma as opposed to members of the general public not so equally exposed to Benezene, and said Benzene exposure was a "major" factor in the development of plaintiff's plasmacytoma.
9. Around the time he sought medical treatment for his stomach problems in 1982, plaintiff also began to experience breathing problems manifested by shortness of breath. Plaintiff has undergone various pulmonary function studies which have resulted in a diagnosis of mild to moderate chronic obstructive pulmonary disease associated with a small reversible component. He has a small component of asthma and also findings that are consistent with emphysema. While medical opinions vary as to the contribution of plaintiff's employment with defendant-employer wherein he was exposed to various irritant chemicals in addition to Benzene including sulfur dioxide and vanadium pentoxide, the undersigned afford the greatest weight to the opinion of Dr. Hayes, an expert pulmonologist. Therefore, the undersigned find that plaintiff's chronic obstructive pulmonary disease is not attributable to his employment with defendant-employer and that the sole cause for plaintiff's chronic obstructive pulmonary disease is his history of smoking cigarettes for at least forty years.
10. Additionally, while plaintiff was exposed to asbestos during the course of his employment with defendant-employer, Dr. Hayes is the only expert witness who is a certified B-Reader; and again, the undersigned afford greater weight to the opinion of Dr. Hayes regarding whether or not plaintiff suffers from asbestosis. Therefore, the undersigned find that plaintiff does not have parenchymal or pleural changes resulting from asbestos exposure and does not suffer from asbestosis.
11. As a result of his plasmacytoma and subsequent gastrointestinal problems, plaintiff has been unable to perform his prior work activities with defendant-employer or to engage in other work activities since August 19, 1982, the date of his stomach surgery. While plaintiff alleges that he ceased employment with defendant-employer in 1977 due to weakness, the medical evidence of record reveals that plaintiff related a history to Dr. Williams in August 1982 of being in relatively good health and of being self-employed prior to undergoing said surgery. Furthermore, employment records of defendant-employer also failed to indicate any medical problem regarding plaintiff leaving employment in 1977 only stating that the plaintiff was being placed on an inactive status. The plaintiff himself testified that he continued to perform various odd jobs between 1977 and 1982. Also, medical records regarding treatment of plaintiff for his gastrointestinal problems included the record of Dr. Hunter of January 2, 1985 which stated that plaintiff would not be considered "medically" disabled because of his plasmacytoma during that period of time. However, the undersigned find that based on the convincing totality of the medical evidence of record, that plaintiff would be vocationally restricted following said surgery because of his continuing medical problems related to his gastrointestinal condition. Plaintiff did not obtain employment after his surgery in August 1982, defendants did not offer plaintiff employment within his capacity, and defendants have failed to sufficiently show that plaintiff could have obtained employment within his capacity when considering plaintiff's age, education and prior work experience.
12. Medical evidence of record adequately demonstrates that plaintiff has remained totally disabled since said surgery as a result of his malnourishment, weakness and frailty due to his gastrointestinal tract disease.
13. In is undisputed that defendant-carrier, Aetna Insurance Company provided workers' compensation coverage for defendant-employer from June of 1973 through June of 1975 under policy No. 25C881188CCA. Furthermore, Industrial Commission records show Aetna Insurance Company as the carrier for defendant-employer from June of 1975 and continuing through the course of plaintiff's employment with defendant-employer under the same policy No. 25C881188CCA.
14. Defendant-carrier, Travelers Insurance Company, presented evidence that it never provided coverage for defendant-employer prior to 1981. In fact, said carrier provided evidence consisting of a memo of May 15, 1978 for a premium quote from Travelers regarding the workers' compensation coverage for defendant-employer's Wilmington facility.
15. Prior to 1981, defendant-carrier, Aetna, did not terminate its coverage for defendant-employer's Wilmington facility. While negotiations were going on between defendant-employer and Travelers Insurance Company regarding the assumption of workers' compensation coverage for said facility by defendant-carrier Travelers, there was no change in defendant-employer's workers' compensation coverage for its Wilmington facility prior to 1981; and defendant-carrier, Aetna Insurance Company, remained the workers' compensation carrier on the risk.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, with minor technical modifications, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff's employment as a craftsman's helper, was a significant contributing factor in the development of his plasmacytoma and subsequent gastrointestinal tract disease. Therefore, plaintiff has contracted an occupational disease which is due to causes and conditions characteristic of and peculiar to his employment which is not an ordinary disease of life to which the general public is equally exposed outside of said employment. N.C. Gen. Stat. § 97-53 (13).
2. As a result of this occupational disease, plaintiff is entitled to temporary total disability compensation benefits at the rate of $127.72 per week beginning August 19, 1982 and continuing barring a change of condition, a return to work or further order of the Industrial Commission for the temporary total disability he has sustained as a result of said occupational disease. Plaintiff has failed to sufficiently or convincingly prove that he is entitled to temporary total disability compensation benefits from February 7, 1977 until August 19, 1982. N.C. Gen. Stat. § 97-29.
3. Plaintiff has failed to sufficiently or convincingly prove that his pulmonary condition resulted from his employment with defendant-employer so as to constitute an occupational disease. N.C. Gen. Stat. § 97-53 (13).
4. Plaintiff is entitled to have defendants' provide all medical treatment arising as a result of his plasmacytoma and subsequent gastrointestinal tract disease to the extent said treatment tends to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. Defendant-carrier, Aetna Insurance Company, was the workers' compensation carrier for defendant-employer during the counsel of plaintiff's employment with defendant-employer and was, therefore, the carrier on the risk when plaintiff was last injuriously exposed. N.C. Gen. Stat. § 97-57.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff is entitled to compensation at the rate of $127.72 per week for the period commencing August 19, 1982 and continuing, subject to a change of condition, return to work or further Order of the Industrial Commission for the temporary total disability he has sustained as a result of the occupational disease giving rise hereto. That portion of this compensation which has accrued shall be paid in a lump sum, subject to the attorney fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred as a result of said occupational disease.
3. An attorney's fee of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel. The accrued portion of the fee shall be deducted from the accrued benefits; and thereafter, defendants shall forward every fourth check of compensation benefits to plaintiff's counsel until plaintiff is no longer entitled to compensation benefits.
4. Defendant-carrier, Aetna Insurance Company, shall pay the costs, including expert witness fees in the amounts of $150.00 to Dr. Gottovi and $175.00 to Ms. Assefa.
* * * * * * * * * * *
ORDER
1. This case is hereby DISMISSED as to defendant-carrier, Travelers Insurance Company.
2. This case is ORDERED REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1996.
 S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
S/ ____________________ COY M. VANCE COMMISSIONER
JHB/nwm 10/02/96